**TRAFFIC TELEPHONE WORKERS FEDERATION OF NEW JERSEY et al. v. DRISCOLL, Governor, et al.**

Civ. A. No. 10064.

District Court, D. New Jersey.

April 15, 1947.

Israel B. Greene, of Newark, and Henry Mayer, of New York City, for plaintiffs.

Walter D. Van Riper, of Newark, for defendants.

Emil Oxfeld (of Rothbard, Harris & Oxfeld), of Newark, for American Civil Liberties Union, amicus curiae.

FAKE, District Judge.

This is an application for a temporary restraining order pending the convening of a three-judge court to pass upon the validity of a New Jersey statute bearing upon labor disputes. The court convenes pursuant to Title 28 U.S.C.A. § 380, Judicial Code 266.

■ Under this statute I am authorized to grant the temporary relief sought if the necessary requirements are met. In this connection there are two major problems to be considered.

■ The first bears upon the question as to whether or not it appears on the face of the record before me that something more than a mere capricious or wholly unreasonable attack is made upon the State statute. It is not for me at this time to deal with the ultimate question of validity. It is sufficient for present purposes if the record presents a justiciable issue. It appears that issues are raised bearing upon involuntary servitude said to be in conflict with the 13th Amendment to the United States Constitution. Freedom of speech and peaceable picketing are also involved. An issue is also raised as to the extent of the police power of the State to pass an act in conflict with the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. So also a nice question looms up in the offing as to whether the State enjoys immunity as does the Federal Government from the spirit of the Norris-LaGuardia, 29 U.S.C.A. § 101 et seq., and the Clayton Acts, 15 U.S.C.A. § 12 et seq., in so far as injunctive relief is concerned. There are other issues as well but those above mentioned indicate the far-reaching seriousness of the basic issues. They indicate that something considerably more than a frivolous attack is to be met when the three-judge court convenes.

The second major factor bears upon a weighing of the inconveniences. In this connection the equitable approach is suggested in a Federal statute which provides "That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief." 29 U.S.C.A. § 107. Here I look into the situation as it now prevails throughout the State. Private business is seriously impeded by a total failure of telephone service. Picket lines are established to prevent either the State or the Telephone Company from furnishing service to private users. In the event of the validity of the statute, these pickets and their aiders and abetters are laying themselves liable to criminal prosecutions and continuing daily penalties of at least $250 each, while the unions themselves are subject under the statute to penalties of $10,000 for each day the strike continues with their connivance.

Whether I like it or not this Court is bound by the statutory and case law as it is written. In the Federal sphere peaceful strikes are validated by statute and as well by case law. Thus the Clayton Act provides that this Court shall not function to "prohibit any person or persons, whether singly or in concert, from terminating any relation of employment, or from ceasing to perform any work or labor, or from recommending, advising, or persuading others by peaceful means so to do." 29 U.S.C.A. § 52. In American Federation of Labor v. Watson, 327 U.S. 582, 66 S.Ct. 761, 766, 90 L.Ed. 873, the Supreme Court deals with one of the rights of organized labor as follows: "It is fair to say on a reading of the bill that from the viewpoint both of the appellant unions and the appellant employers the disruption in collective bargaining which would be occasioned by holding closed-shop agreements illegal would be so serious as to make it futile to attempt to measure the loss in money damages. * * * The loss in bargaining position by the unions, the disruption of harmonious relationships between the union and the employers, the almost certain decrease in union membership—these are matters involving intangible values." While I am not now concerned with a closed-shop issue, I am concerned, among other things, with a Federal right to strike and this right falls in the same class as the right to maintain a closed-shop which the

Supreme Court protects as above stated. It follows here that if the statute complained of is eventually found to be invalid the unions and the strikers here will suffer an irreparable injury by the continued enforcement of the State statute. At this moment they are confronted not only with the hazards of arrests but with a multiplicity of suits tending to destroy their union.

In weighing the equities and the inconveniences involved, I take notice of the fact that the pending strike has not impeded official calls, or private emergency calls, so the problem narrows down to a consideration of private individual inconveniences on the one side and the heretofore recognized right of the strikers on the other. The answer is found in Stapleton v. Mitchell, D.C., 60 F.Supp. 51, 61, where it is held, "The right to peaceably strike or to participate in one, to work or refuse to work and to choose the terms and conditions under which one will work, like the right to make a speech, are fundamental human liberties which the state may not condition or abridge in the absence of grave and immediate danger to the community. * * * In this setting we think it is the inherent prohibitions of the statute standing alone which impose the unconstitutional restraint, and *those against whom the statute is plainly directed should not be required to abide the processes of criminal justice in order to obtain the redress to which they are entitled under the Federal Constitution."* This is recited and italicized here not because of its possible bearing on the ultimate question of the validity of the State statute but because of the weight given to the right involved.

I am of the opinion in weighing the equities that the status quo should be maintained so far as possible until the question of the validity or constitutionality of said sections of said statute is established one way or the other. It is therefore concluded that the defendants, Alfred E. Driscoll, Governor of the State of New Jersey, Walter D. Van Riper, Attorney General of the State of New Jersey, and Harry C. Harper, Commissioner of Labor of the State of New Jersey, and their agents, servants and employees, and all law enforcement officers of the State of New Jersey, and all persons in active concert and participation with them be and they are hereby enjoined and restrained as follows:

They shall hold in status quo all actions at law or in equity, civil or criminal, now pending in the New Jersey courts and heretofore commenced by them under or pursuant to the terms and conditions of the statute complained of in these proceedings, and they shall take no further or other actions, civil or criminal, in any court in pursuance of said statute except as hereinafter provided, until the further order of this Court. Nothing herein contained, however, shall be construed to restrain the defendants above named from proceeding under the arbitration provisions of said statute without prejudice to their rights asserted in these proceedings, the result thereof to abide the final judgment of the Court as to the validity or constitutionality of the said statute, or from instituting such actions or suits as they may be advised are proper under any other statute of the State of New Jersey, or ordinance of any political subdivision thereof.