## TRAFFIC TELEPHONE WORKERS' FEDERATION OF NEW JERSEY et al. v. DRISCOLL, Governor of New Jersey, et

### Civil Action No. 10064.

District Court, D. New Jersey.
July 3, 1947.

Israel B. Greene, of Newark, N. J., and Henry Mayer, of New York City, for plaintiffs.

Walter D. Van Riper, of Newark, N. J., Benjamin C. Van Tine, of Trenton, N. J., and Dominic A. Cavicchia, of Newark, N. J., for defendants.

Emil Oxfeld (of Rothbard, Harris & Oxfeld), of Newark, N. J., for American Civil Liberties Union, amicus curiae.

Abraham L. Friedman (of Rothbard, Harris & Oxfeld), of Newark, N. J., for United Public Workers of America, C.I.O., Locals 331 and 423, George Breyer, and Arthur Fennimore, on application to intervene.

Before BIGGS, Circuit Judge, and FAKE and MEANEY, District Judges.

BIGGS, Circuit Judge.

Traffic Telephone Workers' Federation of New Jersey, an unincorporated association, and Mary Hanscom, Virginia Wigglesworth and Elizabeth Ryan, brought suit against Alfred E. Driscoll, Governor of the State of New Jersey, and Harry C. Harper, Commissioner of Labor of the State of New Jersey, to enjoin the defendants from enforcing or attempting to enforce the provisions of Chapter 38, Public Laws of New Jersey, 1946,[1] as amended by Chapter 47, Public Laws of New Jersey, 1947,[2] from prosecuting criminal actions brought under the Act against the individual plaintiffs to impose the criminal sanctions provided by the Act on them, from prosecuting an action at law under the Act, as amended, against the plaintiff Union to impose the penalties prescribed by the Act, from making or issuing any public statements, proclamations or orders to the public or to law enforcement officers or agents of the State of New Jersey, announcing or directing that the plaintiffs or any one acting in concert with them would be prosecuted civilly or criminally under the Act, and that a temporary restraining order be granted restraining the defendants from performing any of the actions referred to herein pending the hearing on the plaintiffs' motion for a preliminary or interlocutory injunction, and that a three-judge court be convened in accordance with Section 266 of the Judicial Code, as amended, 28 U.S.C.A. § 380, to grant the "preliminary relief" prayed for. The complaint ends with a prayer in the usual form for such other and further relief as may be just and equitable in the premises.

Jurisdiction in the suit at bar is based primarily upon Section 24(14) of the Judicial Code, 28 U.S.C.A. § 41(14), though other grounds of jurisdiction also are alleged. See Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423.

The complaint, when filed, was presented to the Honorable Guy L. Fake, Senior District Judge of the District Court of the

---

[1] See N.J.S.A. 34:13B-1 to 34:13B-17.

[2] See N.J.Sess.L.Service 1947, c. 47, p. 78, N.J.S.A. 34:13B-18 to 34:13B-25.

United States for the District of New Jersey, who, on motion of the plaintiffs, supported by affidavits, on April 15, 1947, 71 F.Supp. 681,[3] granted ad interim restraint, to remain in force only until the hearing and determination of the application for an interlocutory injunction, and called to his assistance to hear and determine the application the Honorable Thomas F. Meaney, a Judge of the District Court of the United States for the District of New Jersey, and the present writer. On April 23, 1947 argument on the plaintiffs' motion for an interlocutory injunction was had and testimony was taken. At this hearing the Attorney General of New Jersey, appearing both pro se and on behalf of the State of New Jersey and of its officers, moved for a stay of proceedings in this court pursuant to the provisions of Section 266 of the Judicial Code, 28 U.S.C.A. § 380. He stated, inter alia, to the court (1) that the prosecutions of the individual plaintiffs would be terminated forthwith; (2) that the statute of New Jersey against which the complaint was directed had been further amended by Chapter 75, Public Laws of New Jersey 1947, approved the preceding day, April 22, 1947,[4] by excising certain provisions and adding others, and most important of all (3) that on April 19, 1947 the Attorney General of New Jersey had filed a bill of complaint in the Court of Chancery of New Jersey based on the New Jersey statute, as amended, praying, among other things, that Court to determine the constitutionality of the Act and to enjoin the plaintiffs in the instant suit from interfering with the operation of the New Jersey Bell Telephone Company by the State of New Jersey. On that day the Chancellor of New Jersey issued a preliminary injunction directed to the Attorney General of New Jersey and to other State officers requiring them to hold all pending proceedings under the New Jersey statute in status quo and to start no additional proceedings thereunder pending the determination of the constitutionality of the Act by the Court of Chancery.

At the close of the hearing on April 23, 1947 the parties stipulated that the restraining order issued by the court should remain in effect until the determination of the application for an interlocutory injunction. See the provisions of Section 266 of the Judicial Code. Cf. the provisions of Rule 65(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and the decision of the Circuit Court of Appeals for this Circuit in Sims v. Greene, 3 Cir., 160 F.2d 512, 516.

There was a further hearing before this court on May 13, 1947 at which time it was stipulated that the instant case, if the stay moved for the Attorney General was not granted, should be heard and disposed of as if on final hearing. At that hearing it was stated to the court by the Attorney General of New Jersey that the criminal proceedings against the individual plaintiffs had been dismissed though the suit for penalties against the Union was still pending. We may also take judicial notice of the widely known fact that since the hearing of May 13 the dispute between the New Jersey Bell Telephone Company and the Union has been settled and that the strike has come to an end. The suit for penalties against the Union, however, is still pending. The Court of Chancery of New Jersey, of course, has not yet had time to dispose of the suit pending before it.

The defendants in the suit at bar point to the final sentences of Section 266 of the Judicial Code, as follows: "It is further provided that if before the final hearing of such application a suit shall have been

---

[3] Judge Fake amended the order on April 18, 1947 to permit the plaintiffs to proceed with arbitration proceedings.

[4] See N.J.Sess.L.Service 1947, c. 75, p. 120. The changes effected need not be detailed in this opinion. It is sufficient to state that the provisions for criminal sanctions to be imposed upon individuals violating the Act were mollified, that an appeal was provided to the Supreme Court of New Jersey from decisions and awards of the Board of Arbitration, and the Attorney General of the State of New Jersey was authorized to file a bill in the Court of Chancery in the name of the State for an injunction to prohibit any violation of the provisions of the Act as amended, or for "any declaratory and other relief". As to declaratory relief, see Section 11 of Chapter 75, P.L. 1947, N.J.S.A. 34:13B–26.

brought in a court of the State having jurisdiction thereof under the laws of such State, to enforce such statute or order, accompanied by a stay in such State court of proceedings under such statute or order pending the determination of such suit by such State court, all proceedings in any court of the United States to restrain the execution of such statute or order shall be stayed pending the final determination of such suit in the courts of the State. Such stay may be vacated upon proof made after hearing, and notice of ten days served upon the attorney general of the State, that the suit in the State courts is not being prosecuted with diligence and good faith." The defendants insist that this court must stay its hand pending the final determination of the suit brought by the Attorney General in the Court of Chancery. To this course the plaintiffs interpose numerous objections. We will deal with these in the order in which they are offered.

■■ The plaintiffs insist, first that the Court of Chancery of New Jersey is without jurisdiction to enjoin criminal prosecutions, viz., those in which the three individual plaintiffs are defendants, or to stay an action for collection of the statutory penalties prescribed by the Act. They cite the opinion of the Court of Errors and Appeals of New Jersey in the case of Moresh v. O'Regan, 1937, 122 N.J.Eq. 388, 192 A. 831, 194 A. 156. In the cited case the Court of Errors and appeals held that the Court of Chancery was without jurisdiction to enjoin prosecutions of indictments or restrain the collection of penalties. It ruled also that the Declaratory Judgments Act of New Jersey, N.J.S.A. 2:26–66 to 2:26–79, did not extend the jurisdiction of the Court of Chancery. We may point out, however, that the statute of New Jersey here under consideration contains provisions for the exercise of its injunctive powers to prohibit violation of the Act and for "declaratory" relief. Putting to one side for the time being the question of whether the Court of Chancery, gaining authority and jurisdiction by virtue of the Act sub judice, may enjoin the prosecution of the suit instituted against the Union for penalties, it must

be conceded that any question raised as to the sufficiency of the statute to authorize the enjoining of the criminal proceedings against the individual plaintiffs has become moot for the criminal proceedings against the individual plaintiffs have been dismissed. We cannot hold that the Court of Errors and Appeals of New Jersey will hold that the Court of Chancery was without the power to issue the injunction issued by it in the case before it; nor can we say that the Court of Chancery lacks the power or the jurisdiction to determine the constitutionality of the New Jersey Act. It is clear that the Legislature of New Jersey has sought to confer additional jurisdiction on the Court of Chancery. The extent of that jurisdiction may be determined as appropriately by the State Courts of New Jersey as by the District Court of the United States for the District of New Jersey. Moreover, it may not be doubted that the Court of Chancery possesses the power to maintain the status quo respecting a suit pending before it and has done so by an injunction couched in appropriate words. A somewhat analogous question was before the Supreme Court of the United States in the cases of the United States of America v. United Mine Workers of America, 67 S.Ct. 677,[5] and the ruling in that case aids the view herein expressed. But the short answer to the plaintiffs' assertion is that an injunction did issue from the Court of Chancery restraining the Attorney General of New Jersey and the law enforcement officers of New Jersey from proceeding with the suit against the Union for penalties or from instituting any new suit or proceeding. That injunction is valid and subsisting. This court cannot overlook that fact.

■ The plaintiffs next assert that the bringing of the suit in Chancery was not authorized by the law of New Jersey and, referring to the proviso of Section 266 of the Judicial Code quoted above, assert that it must clearly appear that a suit brought in a State court is authorized under State law. The plaintiffs also cite the article "State Determination of State Law", Pogue, 41 Harvard Law Review 623, at p.

---

[5] Decided March 6, 1947.

635, where the learned author takes the position that in the absence of a special State statute it is doubtful if a State tribunal possesses the authority to issue a stay within the purview of the language of Section 266 referred to. The theory cited is an interesting one. We are unable, however, to find any case directly upholding the plaintiffs' assertion in this connection. Cf. General Outdoor Advertising Co. v. Williams, D.C.D.Mass., 9 F.2d 165, 166, reversed on grounds not presently pertinent, 1 Cir., 12 F.2d 773. In fact the authority of the decisions clearly looks the other way and we may doubt if Congress intended to complicate the situation by requiring the Legislatures of the respective States to pass special acts to bring the orders of their respective tribunals within the purview of Section 266. See note 6 to Section 380 of Title 28 of the United States Code Annotated and the authorities cited therein.

■ Next the plaintiffs insist that the suit in Chancery is not one "to enforce the statute" within the proviso of Section 266. It is indeed somewhat of an anomaly for a legislature to provide for decrees of a Court of Chancery to aid the law enforcement officers of a State when there are applicable criminal sanctions set up in the statute itself and it is the duty of State law enforcement officers to see that violators of the provisions of the statute are brought to book before appropriate tribunals of the State. In short the Constitution and laws of New Jersey have provided means and machinery to enforce the criminal statutes of the State. The remedy of injunction is usually considered to be purely preventative in nature and a defendant ordinarily is not punished by a Court of Chancery for any statutory crime which he may have committed, punitive sanctions usually being left to the criminal courts. But we are aware that legislation relating to labor is in a condition of flux and that the legislatures of the States have passed many acts relating to labor within the last twenty-four months. The legislatures of the States to some degree at least are to be treated as laboratories in which experimentation may be conducted for State purposes albeit within the courses specified by the Constitution of the United States. We cannot say that because the Legislature of New Jersey has followed what may seem to us, or to others, the anomalous course of arming New Jersey law enforcement officers with Chancery decrees which may be employed against alleged wrong-doers, the pending Chancery suit is not one to enforce the statute sub judice, or that the proceeding in the Court of Chancery is not one "prosecuted with diligence and good faith" as Section 266 requires. Many an anomaly of the law has become its settled practice after a lapse of time.

■ The plaintiffs also contend that the Chancery suit was not accompanied by a stay of all proceedings under the challenged statute and the restraint ordered by the Chancellor is not so broad in scope as the temporary relief prayed for or already granted in this court. Conceding that the stay contemplated by Congress in Section 266 was a general one, we cannot concur with the views expressed in Northwestern Bell Telephone Co. v. Hilton, D.C.D.Minn. 1921, 274 F. 384, in which it was held that the stay given in the State court must be the equivalent of an interlocutory injunction. The injunctive order of the Court of Chancery, as we read it, is precisely within the terms of the proviso of Section 266.

■ Next the plaintiffs assert that the action in the State court is not a bona fide suit involving a genuine controversy but is a fictitious one insofar as it relates to the injunction granted by it. It is true that no cause of action is alleged against the Attorney General or the Commissioner of Labor of New Jersey. Cf. Munday v. Vail, 34 N.J.L. 418; Hubbard v. Montross Metal Shingle Co., 79 N.J.L. 208, 74 A. 254. The seventh prayer of the bill in chancery, however, prays for a restraining order and the Chancellor of New Jersey saw fit to grant the relief prayed for. That the Attorney General of New Jersey presented the bill and applied for the injunction against himself and the other law enforcement officers of the State must again be characterized as anomalous. But mere anomaly is insufficient to invalidate a statute or an injunction. We cannot believe that the Court of Chancery issued a frivolous order. We must assume that a violation

of the injunction of the Chancery Court by the Attorney General or by any other law enforcement officer of New Jersey would bring upon him or them adequate punitive sanctions to be applied by the Chancellor. Moreover, Section 266 states that if the suit in the State court is not being prosecuted with diligence and good faith this court may vacate any stay issued by it. The doors of the District Court of the United States will remain open.

■ Finally, the plaintiffs assert that because the chancery suit was filed and the Chancellor's injunction was obtained after the entry of the temporary restraining order in this court the proviso of Section 266 hereinbefore quoted does not apply. In support of their position the plaintiffs cite Union Light, Heat & Power Co. v. Railroad Commission, D.C.E.D.Ky.1926, 17 F.2d 143, 147, and in particular that part of the opinion which reads: "That portion of the section dealing with abatement of the action in the federal court obviously refers to those cases where no temporary restraining order has been issued and where, before final hearing on the application for the interlocutory injunction, suit has been brought in the state court to enforce the statute or order complained of, accompanied by a stay of all proceedings under such statute or order. We cannot conceive how that portion of section 266 of the Judicial Code relied upon by the defendants can be construed to apply to a case where a temporary restraining order issued by the federal court was in full force and effect at the time those against whom it was directed instituted their suit in the state court to enforce the state statute or order complained of."

■ With all respect we must state that we are unable to agree with the reasoning and conclusions of the learned Court. As we read the proviso of Section 266 there is no limitation in time save that the injunctive relief granted by the State court must have issued before the final hearing of the application for a preliminary injunction in the District Court of the United States. In the case at bar, as we have stated, the Chancellor issued his restraining order on the 19th of April, 1947, and the hearing in this court upon the application for prelim-inary injunction was had on April 23, 1947. The action of the Chancellor of New Jersey in our opinion is literally within the purview of the language of Section 266 hereinbefore quoted.

■ In their complaint, in their briefs and in their arguments the plaintiffs lay emphasis upon the denial of their civil rights by the New Jersey Act against which relief is sought. The plaintiffs assert also that the New Jersey statute deprives them of rights secured to them by Congress under the National Labor Relations Act, 29 U.S.C.A. §§ 151–166, and under the Smith-Connally Anti-Strike Act, 50 U.S.C.A.Appendix, §§ 1501–1511. They contend in substance that since the New Jersey statute will have an impact, disastrous in their view, upon rights and privileges secured to them by the Constitution of the United States and by federal laws, this court, having first obtained jurisdiction, should presently adjudicate every pertinent question involved and should not stay its proceedings. The reach of the New Jersey Act is indeed broad, even as modified by the amendments, but we are convinced that Congress intended the effect of the proviso of Section 266 to be such that when its requirements have been met by the appropriate action in and by a State tribunal, a District Court of the United States must stay its hand unless and until the State tribunal should declare itself to be without power to determine the issues. The Constitution and laws of the United States are before the Court of Chancery of New Jersey which must determine the rights of the parties, and if there be ·error in the decision of that tribunal, a result which we cannot presume, an appeal lies therefrom to the Court of Errors and Appeals of New Jersey. From that Court the plaintiffs may bring their case before the Supreme Court of the United States. To assume that the plaintiffs would not receive justice under such circumstances is to presume an absurdity.

■ The provisions of Section 266 of the Judicial Code, as well as those of Section 265, 28 U.S.C.A. § 379, were intended to effect comity between Federal and State tribunals to preserve the independence of each. We think we need dilate no further

upon this subject except to point out that in the recent decision in A. F. of L. v. Watson, 327 U.S. 582, 595-599, 66 S.Ct. 761, 90 L.Ed. 873, the Supreme Court of the United States pointed out the desirability of a district court of the United States not passing upon the merits of a controversy concerning the provisions of a State constitution until the question had been authoritatively construed by the State court. What the Supreme Court has stated in the cited case in respect to the constitution of a State we deem to be applicable to the New Jersey statute now before the Court of Chancery.

In our opinion we are required to grant the motion of the Attorney General of New Jersey for stay.

In view of what we have stated it is presently unnecessary for us to pass upon the numerous applications for intervention in the suit at bar.

An order may be submitted.